IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 2000 Session

## STATE OF TENNESSEE v. LESTER DOUGLAS GILES

**Appeal from the Criminal Court for Monroe County**
**No. 98-156     Carroll L. Ross, Judge**

_____

**No. E1999-02236-CCA-R3-CD**
**July 31, 2000**
_____

On June 21, 1999, the defendant pled guilty in the Monroe County Criminal Court to attempted rape and was sentenced to four years as a Range I standard offender. The sentence was suspended, and he was placed on probation. On July 6, 1999, a probation violation was issued, alleging that the defendant had violated his probation by having contact with the victim's family. Following a hearing on August 16, 1999, the trial court ruled that the defendant had violated the terms of his probation, a ruling which the defendant timely appealed. Based upon our review, we reverse the judgment of the trial court and reinstate the defendant's probation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOE G. RILEY and THOMAS T. WOODALL, JJ., joined.

Steve McEwen, Mountain City, Tennessee; Charles M. Corn, District Public Defender; and William C. Donaldson, Assistant Public Defender (on appeal) and Thomas Kimball, Assistant Public Defender (at trial) for the appellant, Lester Douglas Giles.

Paul G. Summers, Attorney General and Reporter; R. Stephen Jobe, Assistant Attorney General; Jerry N. Estes, District Attorney General; and Chalmers Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Lester Douglas Giles, appeals as of right from the order of the Monroe County Criminal Court revoking his probation and requiring him to serve his four-year sentence for attempted rape. He contends that the trial court abused its discretion in finding that he had contact with the victim's family in violation of the terms of his probation.

The defendant pled guilty to attempted rape and received a four-year sentence as a Range I, standard offender, to be served on probation. As a condition of probation, the defendant was ordered to have no contact with the victim or her family. The affidavit for the probation violation warrant

states that the defendant "approached the victim's father . . . and stepmother . . . at Cancun's Restaurant" and "verbally and physically assaulted [the father]."[1]

At the revocation hearing, Susan Dodge testified that she is the girlfriend of the victim's father, Don Caylor. She said that she and Mr. Caylor were eating at Cancun Restaurant on July 2, 1999, when the defendant drove past the restaurant to the adjacent hotel where he was staying. She said that the defendant made eye contact with them but then parked his car and walked upstairs to his room. A short time later, the defendant came out of his room and began walking towards her. She went inside to call the police and, when she came outside, the defendant began yelling at her and accusing her of harassing him. She said that Mr. Caylor, who was around the corner from where she was standing, began yelling at the defendant. She said that the defendant turned the corner and that when she turned the corner and saw the men, they were in a fight. Ms. Dodge was the only witness called by the State.

The defendant testified that he had been staying with his father in the hotel adjacent to Cancun Restaurant awaiting his transfer order to Virginia. He received the order on July 2, but it was dated July 7. Thus, he said that he could not go to Virginia until July 7. He said that when he and his father left the hotel to go to dinner on July 2, he noticed people sitting in a white Toyota in the hotel parking lot. He said that the people were staring at him and that one person made an obscene gesture.

The defendant testified that he and his father went to dinner and returned to the hotel. They were in their room for several hours when they heard a loud bang on the door. The defendant looked outside and saw one of the women walking away who had been in the Toyota. He decided to go downstairs to see if anyone had damaged his car. He said that when he reached the bottom of the stairs, Susan Dodge approached him and said, "You're in for it now." He said that Mr. Caylor then approached him, grabbed a shot glass and threw it at him, hitting him in the hip. He headed toward the stairs in order to go to his room and call the police, but Mr. Caylor got in front of him and raised his fists. The defendant punched Mr. Caylor and was then attacked by Mr. Caylor, Susan Dodge, and two others. He said that he was punched, kicked, and dragged over the asphalt. Photographs were admitted into evidence showing injuries consistent with the defendant's description. The defendant testified that after the incident, he was treated at the hospital for his injuries. He said that he and his father then went to Virginia.

The defendant's father, Lester A. Giles, Jr., corroborated the defendant's testimony. Mr. Giles testified that when he went down to the parking lot to check on his son, who had already been injured, Susan Dodge and apparently others were screaming "Baby raper." Mr. Caylor told Mr. Giles, "I'll kill you[,] too." Further, Mr. Giles testified that he and his son had been to the Bi-Lo grocery store the previous day and, as they reached the store entrance, a black car driven by Mr. Caylor stopped beside them. Ms. Dodge, the passenger in the car, rolled down her window,

---

[1]We note that although the warrant refers to the victim's "stepmother," the evidence at trial showed that she was actually the girlfriend of the victim's father.

"hollered" at them, "Are you nervous yet?" and then began laughing as she rolled up the window and the car drove off.

The trial court noted the divergent testimony but, unfortunately, did not make a credibility determination. Essentially, it concluded that whether the defendant's testimony or Ms. Dodge's testimony was believed, the evidence showed that the defendant made contact with the victim's family in violation of the probation order. The court noted that, with respect to the defendant's testimony, the defendant should not have left his hotel room and hit Mr. Caylor. With respect to Ms. Dodge's testimony, the court noted that the defendant should not have approached Ms. Dodge and Mr. Caylor at the restaurant.

The decision to revoke probation is within the discretion of the trial court. See State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978). Upon revoking probation, the trial court has the discretion to order the original sentence to be served. See Tenn. Code Ann. §§ 40-35-310, -311(d). An abuse of discretion may be found only if the record contains no substantial evidence to support the conclusion of the trial court. See State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991).

With respect to the defendant's testimony, the trial court stated that revocation was proper because the defendant "went over and hit Don Caylor when he got mad at him down there." However, the defendant's testimony shows that when he went downstairs to check on his car, Mr. Caylor, who did not testify, threw a shot glass at him. When the defendant tried to go upstairs to call the police, Mr. Caylor prevented him from leaving and raised his fists. The defendant's testimony shows that his striking Mr. Caylor was not out of anger but rather necessity. Although we agree with the trial court that it may have been wiser for the defendant to have remained in his hotel room instead of going outside, we believe that the defendant's purpose was to check on his car, which he had a right to do, and that he could have done so without having contact with the victim's family. We do not believe that the defendant's attempts to defend himself in the midst of an attack constitute the type of contact sufficient to justify a probation revocation.

If Ms. Dodge's testimony is believed, the defendant approached her and began yelling at her. Mr. Caylor then yelled at the defendant, the defendant approached, and a fight ensued. We agree that approaching and yelling at Ms. Dodge was inappropriate, although we note that she was not covered by the "no contact" provision. On the other hand, the defendant's approaching Mr. Caylor would constitute an unjustifiable violation of the "no contact" provision.

However, the record gives no indication of whose testimony is more credible. The failure of Mr. Caylor to testify is of interest. In any event, we cannot, under these circumstances, conclude by a preponderance of the evidence that the defendant violated the terms of his probation.

We are mindful that "a revocation decision is best tested by whether such an action would serve the ends of justice and be in the best interest of both the public and the defendant/appellant." State v. Mitchell, 810 S.W.2d 733, 736 (Tenn. Crim. App. 1991). The record shows that at the time of the incident, the defendant was trying to get transferred out of Tennessee and into Virginia, and it further shows that the defendant did move to Virginia after the incident. In addition, the defendant

had successfully complied with the other terms of his probation, including taking his medication regularly. We believe that justice and the interests of the public and the defendant would best be served by allowing the defendant to serve the remainder of his probation in Virginia, away from the victim and her family.

We reverse the trial court's order and reinstate the defendant's probation.


_____
ALAN E. GLENN, JUDGE